IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PAUL BROWN, ) | Case No. 4:07CV575 |
| ) | |
| Petitioner, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| ERNIE MOORE, Warden, ) | |
| ) | |
| Respondent. ) | **Report and Recommendation** |
| ) | **of Magistrate Judge** |
| ) | |

Petitioner Paul Brown ("Petitioner"), *pro se*, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred during his Trumbull County, Ohio Court of Common Pleas conviction for Illegal Conveyance of Prohibited Items onto Grounds of Detention Facility or Institution, in violation of Ohio Revised Code ("O.R.C.") §§ 2921.36(C) & (G)(2). *Id*. On June 25, 2007, Respondent Ernie Moore ("Respondent") filed a return of writ. ECF Dkt. #8. On July 9, 2007, Petitioner filed a traverse. ECF Dkt. #9.

The case was referred to the undersigned for a Report and Recommendation. ECF Dkt. #5. For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition with prejudice:

**I.    FACTUAL BACKGROUND**

The Eleventh District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct", and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999). As set forth by the Eleventh District Court of Appeals, the facts are:

{¶3} On the morning of January 22, 2004, at approximately 6:15 a.m., an officer of the Trumbull County Correctional Institution patrolled the outer perimeter of the prison. Visibility was low due to snowfall. However, as the officer patrolled the perimeter, he noticed fresh footprints leading toward the outer prison fence, which was adjacent to the prison's recreational yard. Upon further investigation, a balled up sock in a small divot of snow was discovered near the footprints. Based upon the location of the sock, it was apparent that the sock had been thrown over the outer fence in an attempt to place the sock in the recreational yard.

{¶4} The sock was brought inside the prison where its contents were inventoried. Inside the sock were the following items: (1) baggies of crack-cocaine; (2) baggies of marijuana; (3) a balloon; and (4) cigars.

{¶5} Sharon Chilson ("Chilson"), a prison investigator, began to investigate the origin of the sock. Chilson's investigation focused upon the prisoner recreational-aides as suspects. The recreational aides were Chilson's primary suspects based upon their access to the recreational yard. To further her investigation, Chilson began to review taped phone conversations of the recreational aides.

{¶6} Chilson testified that the prison's Inmate Telephone Monitoring System ("ITMS") taped the prisoner's phone conversations. She further testified that ITMS was her responsibility and that she was certified to operate ITMS. ITMS allowed Chilson to pinpoint and review taped phone conversations made by prison inmates during a specific time period. ITMS also allowed Chilson to obtain the phone numbers contacted by the prisoners.

{¶7} Ultimately, Chilson reviewed the taped phone conversations of prisoner recreational-aide, Larry Dawson ("Dawson"). These taped phoned conversations revealed that, just prior to the discovery of the contraband, Dawson and an individual outside the prison had formulated a plan to smuggle drugs into the prison. A report from ITMS established that Dawson's calls were made to [Petitioner's] home phone number. Chilson also reviewed taped phone calls placed by Dawson to [Petitioner] after the sock was discovered. During these taped calls, [Petitioner] attempted to explain to Dawson where he had thrown the sock.

{¶8} In conjunction with Chilson's testimony, Edward Cantor ("Cantor"), [Petitioner's] parole officer, testified that [Petitioner] had provided him with his home telephone number. Cantor verified that the home phone number provided by [Petitioner] was identical to the ITMS telephone number contacted by Dawson during the taped phone conversations.

{¶9} Additional testimony at trial revealed that [Petitioner] was a former inmate at the prison and that he had formed a strong relationship with Dawson while incarcerated. It was also established that [Petitioner] had knowledge as to the manner in which the prison was patrolled and the recreational aides' access to the recreational yard.

{¶10} Arthur Foreman worked as an officer at the prison. He testified that he spoke with [Petitioner] on a daily basis for approximately four years. When the state played the taped phone conversations for Foreman, he testified that it was [Petitioner] speaking with Dawson.

{¶11} Vicki Casey ("Casey"), an officer with the Ohio State Highway Patrol, assisted Chilson with the investigation. As part of her investigation, Casey subpoenaed telephone records from United Telephone Company of Ohio ("United Telephone").

> These records were presented at trial and corroborated Cantor's testimony with respect to [Petitioner's] phone number. Attached to the phone records was the affidavit of a Mr. Falk, attesting to the authenticity of the records.

ECF Dkt. # 8, Ex. 8 at 2-4.

## II.     PROCEDURAL HISTORY

### A.     State Trial Court

On October 28, 2004 the Trumbull County, Ohio Grand Jury issued an indictment charging Petitioner with one count of Illegal Conveyance of Prohibited Items onto Grounds of Detention Facility or Institution, in violation of O.R.C. §§ 2921.36(C) & (G)(2). ECF Dkt. #8, Ex. 1. The matter proceeded to a jury trial where Petitioner represented himself. ECF Dkt. #8, Ex. 2 at 1. The jury found Petitioner guilty of the charge in the indictment. ECF Dkt. #8, Ex. 5;[1] Ex. 16 at 538-39.

On October 12, 2004, the trial court held a sentencing hearing where Petitioner noted that the indictment was erroneous because the crime should have been charged as a felony of the fourth degree. ECF Dkt. #8, Ex. 16 at 541. The prosecutor agreed and stated that the third degree felony indication was a typographical error. *Id.* The trial judge considered the conviction a felony of the fourth degree and sentenced Petitioner to 17 months of imprisonment. *Id.* at 542-43.[2]

On October 19, 2004, the trial court held a second sentencing hearing where the judge vacated the sentence imposed on October 12, 2004 and sentenced Petitioner for a third degree felony. *Id.* at 546-47. The trial judge noted that the indictment charged Petitioner with a violation of O.R.C. §§ 2921.36(C) & (G)(2),[3] which meant that he had not sentenced Petitioner for the correct

---

[1] The trial court's judgment entry for the conviction is attached to Petitioner's notice of appeal (Ex. 5), and no page number is provided.

[2] The undersigned notes that Respondent's Return of Writ makes no mention of this sentencing hearing, despite the fact that Respondent cites to portions of the record preceding and following the October 12, 2004 hearing.

[3] Subsection (G)(2) provides "Whoever . . . commits a violation of division (C) of this section involving any drug of abuse is guilty of illegal conveyance of drugs of abuse onto the

-3-

crime on October 12, 2004. *Id.* The trial judge imposed a 4-year term of imprisonment. *Id.* at 549.

On October 27, 2004, the trial court docketed a journal entry memorializing the imposed sentence. ECF Dkt. #8, Ex. 2. The court's journal entry states that a presumption of a prison sentence applied because Petitioner had been convicted of a third degree felony and none of the factors enumerated in O.R.C. § 2929.13(D) were present. *Id.* at 2. The trial judge further found that Petitioner had been convicted of murder and receiving stolen property, that he had served multiple prison terms, and that he was on parole at the time he committed the offense charged in this case. *Id.* The trial judge also concluded that Petitioner posed the greatest likelihood of committing future crimes. *Id.*

### B. Direct Appeal

On November 3, 4004, Petitioner filed a notice of appeal and asked the court to appoint counsel. ECF Dkt. #8, Ex. 3. Petitioner's counsel submitted three assignments of error on appeal to the Ohio Eleventh District Court of Appeals:

> I. THE TRIAL COURT ERRED BY ALLOWING IN TO EVIDENCE AN AFFIDAVIT AS A BUSINESS RECORD EXCEPTION TO THE HEARSAY RULE
>
> II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION, TO THE PREJUDICE OF THE APPELLANT, BY PERMITTING A WITNESS TO TESTIFY THAT HAD NOT BEEN DISCLOSED DURING DISCOVERY
>
> III. THE APPELLANT'S CONVICTION FOR ILLEGAL CONVEYANCE OF PROHIBITED ITEMS ONTO THE GROUNDS OF A DETENTION FACILITY OR INSTITUTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

ECF Dkt. #8, Ex. 6 at I, 3, 5, 6. On June 3, 2005, Petitioner filed a Corrected Brief. ECF Dkt. #8, Ex. 7. Petitioner raised the same three assignments of error. *Id.* at ii-iii, 5, 10, 14.

On January 17, 2006, the Eleventh District Court of Appeals affirmed Petitioner's conviction. ECF Dkt. #8, Ex. 8.

### C. Rule 26(B) Motion

On February 7, 2006, Petitioner file a *pro se* motion to reopen his appeal pursuant to Ohio

---

grounds of a detention facility or a mental health or mental retardation and developmental disabilities institution, *a felony of the third degree*." (emphasis added).

Rule of Appellate Procedure 26(B). ECF Dkt. #8, Ex. 9. Petitioner asserted ineffective assistance of appellate counsel based upon the following assertion:

> Defendant Appellant asserts that his appellant [sic] counsel failed to raise (2) solid arguments.
>
> (1) *Blakely v. Washington*
>     cite 124 S.Ct. 2531 (2004)
>
> (2) *State v. Gaines* (1989)

ECF Dkt. #8, Ex. 9. The state filed a response brief arguing that Petitioner was procedurally barred from arguing that his appellate counsel was ineffective for not raising a *Blakely* claim because Petitioner failed to raise the *Blakely* claim during sentencing. ECF Dkt. #8, Ex. 10 at 4.

On October 24, 2006, the Eleventh District Court of Appeals issued a judgment entry denying Petitioner's motion to reopen his appeal. ECF Dkt. #8, Ex. 11. Despite the state's waiver argument, the appellate court reviewed the merits of Petitioner's argument on a plain error standard. The appellate court concluded that no error had occurred because it was unclear that *Blakely* applied to Ohio's sentencing statutes until the Supreme Court of Ohio decided *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), over a month after Petitioner's appeal was decided. ECF Dkt. #8, Ex. 11. Therefore, the court concluded that appellate counsel was justified in discounting a potential *Blakely* claim. *Id*.

On November 6, 2006, Petitioner filed a *pro se* notice of appeal to the Supreme Court of Ohio. ECF Dkt. #8, Ex. 12. Petitioner asserted one proposition of law:

> Defendant-appellant sentence are [sic] void as a matter of law pursuant to O.R.C. 2929.14(B) where the trial count imposed more than maximum minimum [sic] sentence of 5 yrs without requiring the state to rebut the presumptive sentence beyond a reasonable doubt. Notwithstanding *State v. Foster*, (2006), 109 Ohio St. 3d 1, 845 N.E.2d 740 in violation of the Ex Post Facto and Double Jeopardy Clauses of the Ohio and United States Constitutions.

ECF Dkt. #8, Ex. 12. On January 24, 2007, the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question. ECF Dkt. #8, Ex. 14.

### D. Federal Habeas Corpus Petition

On February 21, 2007, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999)

citing *Houston v. Lack*, 487 U.S. 266, 270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to prison authorities). Petitioner has raised the following grounds for relief:

> **GROUND ONE:**
> Sentence void under 6 & 14 Amendment.
>
> **SUPPORTING FACTS:**
> State sentencing court inhance [sic] maximum minimum [sic] sentence of one yr by making and using judicial fact finding not found by a jury, nor admitted by defendant. Nor proven beyond a reasonable doubt.

ECF Dkt. #1 at 6. Petitioner did not file a memorandum in support of his petition. On June 25, 2007, Respondent filed a return of writ. ECF Dkt. #8. On July 9, 2007, Petitioner filed a traverse. ECF Dkt. #9.

## III.   PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

The United States Supreme Court has held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity). The undersigned concludes that the instant petition lacks merit, and therefore recommends that the Court dismiss the instant petition on the merits.

## IV.   STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 21, 2007, well

after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

-7-

>
> A. Decisions of lower federal courts may not be considered.
>
> B. Only the holdings of the Supreme Court, rather than its dicta, may be considered.
>
> C. The state court decision may be overturned only if:
>
>> 1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;
>>
>> 2. the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or
>>
>> 3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or
>>
>> 4. the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'
>
> D. Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'
>
> E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221

(1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**V.    ANALYSIS**

Petitioner asserts that his sentence is invalid under the Sixth and Fourteenth Amendments because the trial judge sentenced him beyond the minimum sentence based on facts not found by a jury beyond a reasonable doubt. *See* ECF Dkt. #1 at 6. Petitioner's claim lacks merit and should be dismissed because the trial judge did not make any required findings of fact beyond the fact of a prior conviction.

In *Apprendi v. New Jersey*, the U.S. Supreme Court held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. 466, 490 (2000). In 2004, the U.S. Supreme Court decided *Blakely v. Washington* and held that the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, and not the maximum sentence a judge may impose after finding additional facts. 542 U.S. 269, 303 (2004).

In the case at bar, a jury convicted Petitioner of Count 1 in the indictment, a third degree felony. ECF Dkt. #8, Ex. 5.[4] Pursuant to O.R.C. § 2929.14(A)(3), the potential penalty for a conviction of a third degree felony is 1-5 years of imprisonment. Further, O.R.C. § 2929.14(B) provides that a trial judge shall impose the shortest available prison term except for in certain circumstances. One of those circumstances allowing a judge to impose a greater sentence arises when a defendant has previously served a prison term. O.R.C. § 2929.14(B)(1). In this case, the judge relied on the fact of a prior conviction when he sentenced Petitioner to 4 years of imprisonment instead of the minimum available sentence of 1 year. ECF Dkt. #8, Ex. 2. The judge, however, went on to find that Petitioner posed the greatest likelihood of committing future crimes. *Id*.

The sentencing order in Petitioner's case presents two issues: (1) whether the finding that Petitioner served a prison term violates *Blakely*; and (2) whether the finding that Petitioner posed the greatest likelihood of committing future crimes violates *Blakely*.

With regard to the first issue, this Court has held that the finding required by O.R.C. § 2929.14(B)(1) — the fact that the offender had previously served a prison term — does not violate *Blakely* because it relates to the fact of a prior conviction. *Perry v. Money*, No. 1:05 CV 2737, 2007 WL 2236634, slip op. at *12 (N.D.Ohio July 31, 2007). Consequently, the trial judge's imposition of a sentence based upon a finding that Petitioner had previously served a prison sentence does not violate *Blakely*.

The Court should note that the Supreme Court of Ohio held in *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), that O.R.C. § 2929.14(B) was unconstitutional. The *Foster* court stated, however, that the statute was unconstitutional because "a court is not authorized to exceed the shortest prison term unless it makes the additional findings." *Foster*, 845 N.E.2d at 490. That holding does not apply to O.R.C. § 2929.14(B)(1) because it relates to a prior conviction. *See Apprendi*, 530 U.S. at

---

[4]

The trial court's judgment entry for the conviction is attached to Petitioner's notice of appeal (Ex. 5), and no page number is provided.

490 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.) (emphasis added). It appears that the *Foster* court was referring specifically to O.R.C. § 2929.14(B)(2)'s requirement for the trial judge to find that shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.

Turning to the second issue, the trial judge's finding that Petitioner posed the greatest likelihood of committing future crimes does not violate *Blakely* because such a finding was not necessary to impose a sentence beyond the statutory minimum. Under *Blakely*, the statutory maximum for *Apprendi* purposes is "the maximum a judge *may impose* based solely on the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303 (emphasis added). The key distinction under the Sixth Amendment is what findings the judge was *required* to make before he was authorized to impose the challenged sentence. *See Blakely*, 542 U.S. at 305 ("Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in *Apprendi* ), one of several specified facts (as in *Ring* ), or any aggravating fact (as here)*, it remains the case that the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact.*") (emphasis added). The *Blakely* Court further indicated that a Sixth Amendment violation arises when the judge imposes a sentence beyond what the jury verdict authorizes: "Whether the judicially determined facts require a sentence enhancement or merely allow it, *the verdict alone does not authorize the sentence*." *Id*. at n. 8 (emphasis added). The *Blakely* Court pointed to two prior decisions where the Court upheld sentencing regimes that *permitted* (as opposed to *required*) judicial factfinding. *Id*. at 305 citing *McMillan v. Pennsylvania*, 477 U.S. 79 (1986); *Williams v. New York*, 337 U.S. 241 (1949). The Court noted that neither of those cases involved a sentence greater than what state law authorized on the basis of the verdict alone. *Blakely*, 542 U.S. at 304-05.

The trial judge's sentence in the instant case was authorized by the jury verdict, and, therefore, *Blakey* does not apply. Under O.R.C. § 2929.14(A)(3) and O.R.C. § 2929.14(B)(1), a judge may impose up to a 4-year prison term on a person who is convicted of a third degree felony

-11-

and who has previously served a prison term. In this case, the judge was able to impose a 4-year sentence based on Petitioner's current conviction and his prior convictions. The judge did not have to make any findings of fact with regard to Petitioner's likelihood of recidivism. Therefore, Petitioner's sentence does not implicate *Apprendi* and *Blakely*. The fact that the judge made an unnecessary finding does not change the fact that the judge *could* impose a 4-year sentence based on Petitioner's current and past convictions alone. In short, the jury's verdict authorized the judge to impose the sentence that he did. Therefore, Petitioner's Sixth Amendment claim is meritless.

Lastly, Petitioner has argued in his traverse that *Foster* violates the Ex Post Facto and Double Jeopardy Clauses of the Federal Constitution. ECF Dkt. #9 at 4-8. It is unnecessary to consider these issues because Petitioner's underlying Sixth Amendment claim is meritless. Further, a traverse is an improper document in which to raise new issues that were not raised in a petitioner's original petition for federal habeas relief because it does not notify the State of the claim or allow the State an opportunity to oppose it. *Taylor v. Mitchell*, 296 F.Supp.2d 784, 798 (N.D. Ohio 2003), citing *Cacoperdo v. Demonstenes*, 37 F.3d 504, 507 (9th Cir. 1994) and *Jack v. Randall*, No. C-2-99-947, 2000 WL 1456992 at *7 (S.D. Ohio June 20, 2000). Therefore, the undersigned will not address these arguments.

## VI. ANALYSIS

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition, with prejudice, due to a lack of merit.

DATE: January 31, 2008                *s/ George J. Limbert*
                                                                   George J. Limbert
                                                                   United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).